**256 P.2d 730**

**INDUSTRIAL COMMISSION v. WATSON BROS. TRANSP. CO., Inc.**

No. 5713.

Supreme Court of Arizona.

May 11, 1953.

Robert E. Yount, of Phoenix (Perry M. Ling and Robert W. Pickrell, Phoenix, of counsel), for appellant.

Jack C. Cavness, of Phoenix, for appellee.

PHELPS, Justice.

This cause comes to us on both an appeal and a cross-appeal from a judgment of the superior court of Maricopa County.

The cause of action arose out of an order of appellant Industrial Commission directing Watson Bros. Transportation Co., Inc., a corporation, appellee, to pay to the appellant the sum of $22,174.79 as a total premium claimed to be due for coverage of its employees in Arizona under the Workmen's Compensation Act in this state, A.C.A.1939, § 56–901 et seq., plus $8,370 for an advance deposit based upon its payrolls, and $68.52 premium on occupational disease insurance, making a total of $30,613.31 claimed to be due. The parties will be hereinafter referred to as the commission and Watson Bros. respectively.

Watson Bros. is a corporation organized under the laws of the state of Nebraska with its principal place of business located in the city of Omaha. Insofar as we are concerned it is engaged in interstate trucking in Colorado, New Mexico, Arizona and California. It maintains offices in Nebraska, Colorado, California and Arizona. It employs more than three persons in this state and carries industrial insurance on all employees whose duties are confined within the territorial limits of Arizona and also on all drivers employed in Arizona and operating trucks between termini in Arizona and out of state points. It does not, however, carry such coverage on drivers engaged in interstate commerce between Denver and Los Angeles, or upon drivers employed in Colorado or California who drive trucks to termini in Arizona.

The $22,174.79 premium assessed by the commission against Watson Bros. is broken down in the commission's order as follows:

"(a) For employees employed within the state of Arizona whose duties are confined to the territorial limits of the state of Arizona, the sum of $3,-642.56;

"(b) For employees employed within the state of Arizona whose duties require travel within and without the state of Arizona, the sum of $6,646.43;

"(c) For employees employed outside the state of Arizona whose duties

involve travel via terminal points within the state of Arizona the sum of $4,893.10;

"(d) For employees employed without the state of Arizona whose terminal point is outside the state of Arizona but whose travel requires employment in passing through the state of Arizona, the sum of $7,061.22."

Watson Bros. brought an action in the superior court of Maricopa County to set aside the order of the Industrial Commission directing payment of the above premiums and an advance deposit therein set forth, to which the commission filed an answer amounting in effect to a general denial. In its complaint Watson Bros. does not question the right of the commission to collect premiums on the classifications upon which items (a) and (b) are based but does question the amount of the premium assessed. It also protests items (c) and (d) because it claims such employees were hired either in Denver or Los Angeles and are engaged exclusively in interstate commerce and covered 100% either by the Colorado or the California Workmen's Compensation Act, '35 C.S.A.C. 97, § 280 et seq., Labor Code Cal. § 3201 et seq. It alleges, insofar as these items are concerned, that they do not come under the provisions of the Arizona Workmen's Compensation Act; that the commission is without jurisdiction to assess and to collect such premiums; and to require it to pay premiums on industrial insurance for such employees would constitute an undue burden upon interstate commerce. It further raises the constitutionality of the provisions under which the commission purports to act.

After a hearing before the trial court it entered its judgment in favor of the commission for the collections of premiums shown in items (a) and (b) of the commission's order, and in favor of Watson Bros. on premiums shown in items (c) and (d) thereof, and for an adjustment of the advance deposit demanded by the commission. Each party appeals from that portion of the judgment entered against it.

We will first consider the appeal of the commission. It has presented five assignments of error which raise the one question: Has the commission authority under the Workmen's Compensation Act, section 56–943, A.C.A.1939, to levy and to collect premiums from a foreign corporation engaged in interstate commerce whose employees were hired outside Arizona and are not "regularly employed" in Arizona, even though such employees may be injured in this state? Section 56–943, supra, provides:

"If a workman who has been hired or is regularly employed in this state receives a personal injury by accident arising out of and in the course of such employment, he shall be entitled to compensation according to the law of this state even though such injury was received outside of this state. If

a workman who has been hired outside of this state is injured while engaged in his employer's business, and is entitled to compensation for such injury under the law of the state where he was hired, he shall be entitled to enforce against his employer his rights in this state if his rights are such that they can reasonably be determined and dealt with by the commission and the courts in this state."

Section 56–928, A.C.A.1939, defines the term

" * * * 'regularly employed,' as herein used, includes all employments, whether continuous throughout the year or for only a portion of the year, in the usual trade, business, profession or occupation of an employer. * * *"

We had section 56–943, supra, before us for construction in Ocean Accident & Guarantee Corp. v. Industrial Commission, 32 Ariz. 275, 257 P. 644, 647. Justice Lockwood after quoting the section, had this to say:

"There are three, and only three, cases in which the question of liability under a Compensation Act might be brought before our tribunals. In the first, the status of employer and employee would arise and the accident occur in this state; in the second, one of those events would occur in this state and one without; while in the third both events would occur out of the state. In the first case, obviously our tribunals recognize our act, and it alone, both as to procedure and benefits. In the second case, since our statute is one regulating the status, if the injury occur in the state our law governs, and under the first sentence of section 59, supra [56–943], if the status of employer and employee arises in Arizona, so far as our tribunals are concerned, it will also govern, even though the accident occur elsewhere. This leaves uncovered by the statute only the third case, viz., when the status arises and the accident occurs both outside the jurisdiction of our forums. Such a situation has been brought before the courts many times and the decisions are varied. Bradbury's Workmen's Compensation Laws (3d Ed.) pp. 95–101, and cases cited.

"Certainly this possibility is covered by the language, 'A workman who has been hired outside of this state is injured while engaged in his employer's business.' It will be urged that the language does not expressly state the place of injury must be outside of the state. This is true, but the construction we have given it will make the act provide one and one only certain and definite compensation for each possible class of cases, while any other view would make the basis of the compensation uncertain and unequal' for

like injuries arising from like causes, contrary to the policy of this state. We therefore hold that the last sentence of section 59, supra [56–943], applies only to cases where the status and injury both arise outside of Arizona."

The court then follows with this conclusion:

"For the reasons herein stated, the Industrial Commission rightly held that so long as the injury occurred in Arizona the benefits were governed by our statute."

It will be observed that the distinguished jurist who interpreted this statute stated that in the first of the three conditions under which liability would arise "the status of employer and employee would arise and the accident occur in this state". In the second he states *"one of these events would occur in this state and one without"*. (Emphasis supplied.) In other words the court there held that either the injury or the employment could take place outside the state and under the provisions of section 56–943, supra, the employee would be covered by our Workmen's Compensation Act. In no other way could the court have arrived at the conclusion reached. With due deference to his great ability and his invaluable contribution to the body of the law of this state we can glean no such meaning from the language used. The provisions seem clear and unambiguous that under the first condition the employee must have been hired in Arizona or regularly employed in Arizona and the injury have occurred in Arizona. Second, the employee *must have been hired in Arizona* or regularly employed in Arizona and *the injury must have occurred out of Arizona.* There is nothing in the language used from which even an inference can be drawn that any liability arises where the employee *is hired out of the state of Arizona and injured within the state,* unless such injured person is "regularly employed" in the state at the time of injury. The court made no reference in its opinion to the term "regularly employed" and we are justified in assuming that it formed no basis for the conclusion reached. If the court in that case intended to say that the liability of the Arizona Industrial Fund arose out of the last half of section 56–943, supra, we are unable to follow through. It will be remembered that under the last half of the section

"* * * If a workman who has been hired outside of this state is injured while engaged in his employer's business, and is entitled to compensation for such injury under the law of the state where he was hired, he shall be entitled to enforce against his employer his rights in this state if his rights are such that they can reasonably be determined and dealt with by the commission and the courts in this state."

The court interpreted the above language to apply to those cases where both the employment and the injury occurred outside the state of Arizona and inferred that no liability under our Workmen's Compensation Act would arise under such circumstances. With that conclusion we agree. The court, however, followed this statement with the conclusion:

"*For the reasons herein stated, the Industrial Commission rightly held that so long as the injury occurred in Arizona the benefits were governed by our statute.*" (Emphasis supplied.)

This appears to us to be a non sequitur and finds no support in that portion of said section.

■■ We therefore hold that under the Workmen's Compensation Act as it now exists the industrial fund of this state created under the provisions of that Act is not liable for injuries sustained by an employee within the state if he was employed outside of this state unless at the time of his injury he was "regularly employed" in this state as that term is defined in section 56-928, supra. It is not liable under any circumstances for injuries to a person who was employed outside the state of Arizona and sustained such injuries outside the state.

■ Our statute expressly provides that if one is "regularly employed," as the term is defined in the statute, in this state and is injured in the state, he is entitled to compensation under our Workmen's Compensation Act regardless of where he may have been originally employed. It cannot be logically contended however that truck drivers who reside and are employed by Watson Bros. either in Denver, Colorado, or Los Angeles, California, who make trips in hauling freight from those points to and from fixed termini in Arizona are "regularly employed" in Arizona and certainly it cannot be said that where one is employed in either of those states who at intervals drives his employer's trucks across the state of Arizona while engaged in interstate commerce between Denver and Los Angeles is "regularly employed" in Arizona.

■ The evidence shows that these drivers have 100% insurance coverage in Colorado and California respectively. We recognize the right of a state where Congress has not preempted the field, to regulate such traffic in the state, to some degree, especially where it is purely of local concern even though it does place a burden upon interstate commerce. Hall v. Industrial Commission of Ohio, 131 Ohio St. 416, 3 N.E.2d 367, 370; and Spohn v. Industrial Commission, 138 Ohio St. 42, 32 N.E.2d 554, 133 A.L.R. 951. Yet we believe to require a foreign corporation to carry double compensation insurance on interstate commerce as this would unquestionably do imposes an undue burden thereon and cannot be justified under the law. Spohn v. Industrial Commission, supra. In the instant

364

case the commission is without lawful authority to exact such premiums.

 We are of the view that inasmuch as the findings and judgment of the trial court in favor of the commission against Watson Bros. upon items (a) and (b) of the commission's order are based upon conflicting evidence as to the amount due the commission from Watson Bros., and that under our long-established rule we are bound thereby, the errors assigned on cross-appeal therefore are without merit.

Judgment of the trial court in all respects is affirmed.

STANFORD, C. J., and LA PRADE, UDALL and WINDES, JJ., concur.